# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------------ x
In re:                                             : Chapter 11
                                                   :
THE SCOOTER STORE HOLDINGS, INC., *et al.*,[1]     : Case No. 13-10904 (PJW)
                                                   :
           Debtors.                     : Jointly Administered
                                                   :
                                                   : **Proposed Hearing Date:**
                                                   :    **October 24, 2013 at 3:00 p.m. (ET)**
                                                   : **Proposed Objection Deadline:**
                                                   :    **October 22, 2013 at NOON (ET)**
                                                   :
------------------------------------------------------------------------ x

## DEBTORS' MOTION FOR AN ORDER: (I) APPROVING THE AGREEMENT FOR THE PRIVATE SALE OF CERTAIN OF THE DEBTORS' REMAINING ASSETS; (II) APPROVING THE PRIVATE SALE OF SUCH ASSETS; AND (III) AUTHORIZING RELATED RELIEF

The SCOOTER Store Holdings, Inc. and its affiliated debtors and debtors in

possession in the above-captioned cases (each a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>"), by

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: The SCOOTER Store Holdings, Inc. (7246); The SCOOTER Store – Albuquerque, L.L.C. (3265); The SCOOTER Store – Atlanta, L.L.C. (9883); The SCOOTER Store–Austin, LTD. (4716); The SCOOTER Store – Baltimore, L.L.C. (9884); The SCOOTER Store – Baton Rouge, L.L.C. (9886); The SCOOTER Store – Birmingham, L.L.C. (9887); The SCOOTER Store– Boca Raton, L.L.C. (9889); The SCOOTER Store – Boston, L.L.C. (9893); The SCOOTER Store – Charleston, L.L.C. (9894); The SCOOTER Store – Charlotte, L.L.C. (9902); The SCOOTER Store–Chicago, L.L.C. (2368); The SCOOTER Store – Concord, L.L.C. (9906); The SCOOTER Store–Dallas, LTD. (4717); The SCOOTER Store – Dayton, L.L.C. (8678); The SCOOTER Store – Denver, L.L.C. (9909); The SCOOTER Store – Des Moines, L.L.C. (1260); The SCOOTER Store–Detroit, L.L.C. (2358); The SCOOTER Store–Grand Rapids, L.L.C. (1291); The SCOOTER Store – Green Bay, L.L.C. (1832); The SCOOTER Store – Greenville, L.L.C. (9911); The SCOOTER Store – Hartford, L.L.C. (9912); The SCOOTER Store–Houston, LTD. (4718); The SCOOTER Store – Indianapolis, L.L.C. (8684); The SCOOTER Store – Jackson, L.L.C. (9914); The SCOOTER Store – Jacksonville, L.L.C. (9916); The SCOOTER Store – Kansas City, L.L.C. (8655); The SCOOTER Store – Knoxville, L.L.C. (9921); The SCOOTER Store – Las Vegas, L.L.C. (0038); The SCOOTER Store – Levittown, L.L.C. (9926); The SCOOTER Store – Lincoln, L.L.C. (N/A); The SCOOTER Store – Little Rock, L.L.C. (6425); The SCOOTER Store – Los Angeles, L.L.C. (1294); The SCOOTER Store – Louisville, L.L.C. (9930); The SCOOTER Store–Lubbock, LTD. (4720); The SCOOTER Store–Madison, L.L.C. (1829); The SCOOTER Store – Minneapolis, L.L.C. (9932); The SCOOTER Store – Mobile, L.L.C. (1466); The SCOOTER Store – Nashville, L.L.C. (9939); The SCOOTER Store – Oklahoma City, L.L.C. (6430); The SCOOTER Store – Orlando, L.L.C. (9943); The SCOOTER Store – Paterson, L.L.C. (9949); The SCOOTER Store – Philadelphia, L.L.C. (9945); The SCOOTER Store – Phoenix, L.L.C. (9950); The SCOOTER Store – Pittsburgh, L.L.C. (9952); The SCOOTER Store – Portland, L.L.C. (1922); The SCOOTER Store–Raleigh Durham, L.L.C. (6134); The SCOOTER Store – Richmond, L.L.C. (8676); The SCOOTER Store – Rochester, L.L.C. (9954); The SCOOTER Store – Sacramento, L.L.C. (1298); The SCOOTER Store – Salt Lake City, L.L.C. (1921); The SCOOTER Store–San Antonio, LTD. (4724); The SCOOTER Store – San Diego, L.L.C. (1296); The SCOOTER Store – San Francisco, L.L.C. (1293); The SCOOTER Store – Schenectady, L.L.C. (9958); The SCOOTER Store – Seattle, L.L.C. (1918); The SCOOTER Store – Shreveport, L.L.C. (9961); The SCOOTER Store–Springfield, L.L.C. (1834); The SCOOTER Store – St. Louis, L.L.C. (6975); The SCOOTER Store–Toledo, L.L.C. (8681); The SCOOTER Store – Tulsa, L.L.C. (6436); The SCOOTER Store – West Virginia, L.L.C. (8672); The SCOOTER Store – Wichita, L.L.C. (N/A); The SCOOTER Store – Wilkes-Barre, L.L.C. (9962); The SCOOTER Store, Inc. (7905); The SCOOTER Store–USA, Inc. (0608); The SCOOTER Store – Development, L.L.C. (5073); The SCOOTER Store Financial Services, L.L.C. (5481); The SCOOTER Store Aviation, L.L.C. (7185); TSS Management Company, Inc. (4241); TSS Investments, Inc. (4242); and The Scooter Store, LTD. (0039). The Debtors' mailing address is 1650 Independence Drive, New Braunfels, Texas 78132.

01:14208558.1

and through their undersigned counsel, hereby move this Court for entry of an order substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 363(b) of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) approving the terms of the sale agreement (the "Sale Agreement") with respect to the Debtors' private sale (the "Sale") of their remaining inventory and certain furniture, fixtures and equipment (as described in greater detail below, the "Assets"), an executed copy of which is attached hereto as Exhibit B, by and between the Debtors, as sellers, and Rincon Liquidation Partners, LLC, (the "Purchaser"), as purchaser; (b) approving the Sale pursuant to the terms of the Sale Agreement; and (c) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## **JURISDICTION**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a) and 363(b), (f) and (m), Bankruptcy Rules 2002, 6004 and 9014, and Local Rule 6004-1.

## **INTRODUCTION**

3. On April 15, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only. On April 25, 2013, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

5. Additional information regarding the events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Charles Lowrey of The Scooter Store Holdings, Inc. in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 2], which is incorporated herein by reference.

## BACKGROUND

### A. Initial Asset Sale Efforts

6. On June 3, 2013, the Debtors filed a motion [Docket No. 185] seeking, among other things, entry of an order (the "Bid Procedures Order") (a) approving and authorizing bidding procedures in connection with the sale (the "Going Concern Sale") of substantially all of the Debtors' assets, including the authorization to enter into a stalking horse agreement, (b) scheduling the related auction and hearing to consider approval of the Going Concern Sale, (c) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, (d) approving the form and manner of notice thereof, and (e) granting related relief. On June 24, 2013, the Court entered the Bid Procedures Order. *See* Docket No. 306.

7. Also on June 3, 2013, the Debtors filed the *Debtors' Motion for an Order Establishing Procedures for the Sale of Miscellaneous Assets Free and Clear of Liens, Claims, and Encumbrances Pursuant to Sections 105 and 363 of the Bankruptcy Code* [Docket No. 183] (the "<u>Miscellaneous Asset Sale Motion</u>"). On June 24, 2013, the Court entered an Order (the "<u>Miscellaneous Asset Sale Order</u>") approving the relief requested in the Miscellaneous Asset Sale Motion. *See* Docket No. 304. Pursuant to the Miscellaneous Asset Sale Order, in the absence of an objection, the Debtors are authorized to consummate the sale of Miscellaneous Assets that have a value of less than $100,000 upon notice to certain parties in interest. *See id.*

8. The Auction (as defined in the Bid Procedures Order) was previously scheduled for September 17, 2013, and the hearing (the "<u>Sale Hearing</u>") to consider approval of the Going Concern Sale was previously scheduled for September 24, 2013 at 9:30 a.m. (ET). However, as consequence of recent developments involving the Centers for Medicare & Medicaid Service ("<u>CMS</u>"), the Sale Hearing has been adjourned, and it is highly likely that the Going Concern Sale will not occur.

9. Specifically, on April 17, 2013, CMS imposed an administrative freeze of further Medicare payments to the Debtors pending a request to set-off the "frozen" monies against the Debtors' prepetition debts to CMS. Pursuant to a stipulation [Docket No. 74] (the "<u>Stipulation</u>") between the Debtors and CMS, the parties agreed to "preserve CMS's asserted setoff rights" and the status quo — CMS agreed to lift the freeze temporarily so that Debtors could continue receiving payments from CMS in exchange for, among other things, the right to set off the Debtors' prepetition debts to CMS against any postpetition payments CMS owes to the Debtors. *See* Stipulation Ex. A, ¶¶ 1, 2. After several extensions, the standstill expired on September 10, 2013, and CMS re-imposed the administrative freeze. Further, on September 12,

2013, CMS filed the *United States' Motion for Relief from the Automatic Stay to Set Off Mutual Prepetition Debts and Related Relief* [Docket No. 543]. Because the revenue derived from CMS constituted such a significant portion of the Debtors' income, the imposition of the administrative freeze has left the Debtors with little choice but to immediately begin liquidating their assets.

**B.    Liquidation Process**

10.    In conjunction with the commencement of their liquidation efforts, on September 20, 2013, the Debtors filed their *Supplemental Motion to Debtors' Motion for an Order Establishing Procedures for the Sale of Miscellaneous Assets Free and Clear of All Liens, Claims and Encumbrances Pursuant to Sections 105 and 363 of the Bankruptcy Code* (the "Inventory Sales Motion"), pursuant to which the Debtors sought entry of an order approving certain procedures (the "Inventory Sale Procedures") that would allow the Debtors to liquidate their remaining inventory (the "Inventory") in an expeditious and value-maximizing fashion. The Court scheduled a hearing (the "Inventory Sales Motion Hearing") on the Inventory Sales Motion for September 25, 2013, and following discussions with the U.S. Trustee, the Debtors tendered a revised form of order at such hearing, upon which the Court entered its *Order Establishing Procedures for the Sale of Inventory Free and Clear of All Liens, Claims and Encumbrances Pursuant to Sections 105, 363, and 554 of the Bankruptcy Code* (the "Inventory Sales Procedures Order") [Docket No. 583], thereby approving the revised Inventory Sales Procedures.

11.    The Inventory Sales Procedures Order allows the Debtors to dispose of Inventory in accordance with certain procedures that dictate the notice required in connection with each Inventory sale, the scope of such notice being contingent on the asset value of the

subject Inventory. The Inventory Sale Procedures set a minimum threshold for Inventory that does not exceed $25,000, on a per transaction basis, and approves the disposition of Inventory valued at less than $25,000 without further notice to any party, other than the filing of a notice upon closing of the sale transaction (unless such sale is to an insider, as that term is defined in section 101(31) of the Bankruptcy Code). Since the Inventory Sale Procedures have been implemented, the Debtors have liquidated approximately $500,000 in Inventory.

12. On September 27, 2013, the Debtors filed the *Debtors' Motion for an Order Amending Procedures for the Sale of Miscellaneous Assets Free and Clear of All Liens, Claims and Encumbrances Pursuant to Sections 105, 363 and 554 of the Bankruptcy Code* [Docket No. 593] (the "FF&E Procedures Motion"). On October 10, 2013, the Court entered an Order [Docket No. 635] (the "FF&E Procedures Order") approving the FF&E Procedures Motion.

13. The FF&E Procedures Order allows the Debtors to dispose of furniture, fixtures, and equipment (the "FF&E") located at the warehouses in which their Inventory is stored in accordance with certain procedures that dictate the notice required in connection with each FF&E sale, the scope of such notice being contingent on the asset value of the subject FF&E. The FF&E Sale Procedures set a minimum threshold for FF&E that does not exceed $10,000, on a per transaction basis, and approves the disposition of FF&E valued at less than $10,000 without further notice to any party, other than the filing of a notice upon closing of the sale transaction (unless such sale is to an insider, as that term is defined in section 101(31) of the Bankruptcy Code). As a consequence of the timing of the relief requested herein, the Debtors have not had the opportunity to liquidate any FF&E in accordance with the FF&E Sale Procedures.

14. Because of diminishing liquidity and persisting administrative costs, the Debtors have continued to market the Assets to potential purchasers interested in a bulk transaction. Indeed, monetizing the Assets in this fashion will permit the Debtors to, among other things, reduce expenses incurred with respect to real property leases and employee compensation.

15. Prior to filing this Motion and finalizing the terms of the Sale Agreement, the Debtors undertook significant efforts to market the Assets. Since commencing the liquidation process, the Debtors' management evaluated the best manner in which to liquidate the Assets. As noted, the Debtors' initial efforts focused on selling Assets to individual purchasers, on a piecemeal basis, out of their leased locations, and with the assistance of their current employees. While these sales were taking place, the Debtors reached out to various liquidators and other entities that have experience with the acquisition and resale of distressed company assets. During this stage of their marketing efforts, the Debtors contacted numerous parties in the hopes of finding a potential purchaser that would be willing to close on a sale of the Assets prior to the end of the October – at which point additional rent will be due for the warehouses in which the Assets are currently stored.

16. As a consequence of these efforts, several offers for the Assets were received, and the Debtors entered into negotiations with each party that submitted an offer. After these negotiations were complete, the Debtors, with the assistance of their counsel, concluded that the offer received from the Purchaser will result in the greatest net return. Specifically, after several days of negotiations that included the exchange of numerous offers between the parties, the Purchaser agreed to a purchase price of $800,000 (the "<u>Purchase Price</u>").

17. The material terms of the Sale Agreement[2] are as follows:

    a. <u>Assets</u>.

        i) All Inventory located at the addresses identified on <u>Schedule 1</u> to the Sale Agreement (the "<u>Leased Locations</u>").

        ii) All furniture, fixtures and equipment of Debtor located at the Leased Locations.

        iii) All other tangible assets of Debtor located at the Leased Locations excluding the Excluded Assets (as defined below).

    b. <u>Excluded Assets</u>. Debtors shall retain and not sell or transfer to Purchaser any document, file, paperwork or data (whether in hard copy or electronically stored) which contains any confidential information, including any protected health information for any person.

    c. <u>Purchase Price</u>. The purchase price ("<u>Purchase Price</u>") for the Assets shall be an aggregate sum of eight hundred thousand dollars ($800,000), which shall be paid as follows:

        i) $120,000 has been be paid by Purchaser as a down payment (the "<u>Down Payment</u>"); and

        ii) $680,000 shall be paid by Purchaser in advance of Purchaser taking possession of any Asset.

---

[2] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Sale Agreement. This summary of the Sale Agreement is provided for the Court's convenience only. To the extent the summary differs in any way from the terms of the Sale Agreement, the actual terms of the Sale Agreement shall control.

01:14208558.1

  d. <u>No Further Asset Sales</u>.  Upon delivery of the Down Payment, Debtors shall immediately cease selling Assets to any party other than Purchaser.

  e. <u>Inventory Count</u>.  Contemporaneously with the execution and delivery of the Sale Agreement, Debtors shall provide to Purchaser an up-to-date inventory list for the Leased Locations ("<u>Inventory List</u>").  The Inventory List will include, among other matters, a cost booked by Debtors ("<u>Debtor Inventory Cost</u>") for each item of Inventory identified therein.  Purchaser may commence a count of the actual inventory in the Leased Locations. Purchaser may continue the inventory count until complete, but in any event not later than November 8, 2013 ("<u>Inventory Count Date</u>").  If, on the Inventory Count Date, the total Debtor Inventory Costs associated with the actual inventory count is determined to be less than the total Debtor Inventory Costs reflected in the Inventory List, the Purchase Price may be adjusted as follows:

    i) If the total Debtor Inventory Costs associated with the actual inventory count is greater than or equal to 90% of the total Debtor Inventory Costs reflected in the Inventory List, the Purchase Price shall not be adjusted.

    ii) For every percentage point that the total Debtor Inventory Costs associated with the actual inventory count is below 90%, the Purchase Price shall be lowered by a percentage point.

  f. <u>Closing Date</u>.  The closing shall take place on the date that the Court approves the Sale.

  g. <u>No Warranty</u>.  The Assets are being sold "as is, where is" without any warranty of any kind, either express or implied, including without limitation any implied warranties of condition, uninterrupted use, merchantability, or fitness for a particular purpose.

18. The Debtors do not intend to conduct an auction for the Assets. *See* Del. Bankr. L.R. 6004-1(b)(iv)(D). However, the Debtors have taken, and will continue to take, measures to ensure that any party that may express an interest in purchasing the Assets (to the best of the Debtors' knowledge) or that has expressed an interest in purchasing the Assets has gotten and will get a full and fair opportunity to submit a bid therefor. To this end, the Debtors have given all such known parties notice of the instant Motion and are providing such parties with an opportunity to submit higher or better bids by October 22, 2013 at NOON (ET), thus giving parties an additional twelve days to consider bidding.

19. The Purchaser is not an insider of the Debtors, as such term is defined in section 101(31) of the Bankruptcy Code. *See* Del. Bankr. L.R. 6004-1(b)(iv)(A). However, out of an abundance of caution, the Debtors wish to disclose that a member of the Purchaser's senior management is an acquaintance of the Debtors' general counsel.

**RELIEF REQUESTED**

20. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, authorizing and approving the terms of the Sale Agreement, and the private sale of the Assets.

**BASIS FOR RELIEF REQUESTED**

**A. The Sale, Pursuant to the Terms of the Sale Agreement, Should Be Approved.**

21. For the reasons explained below and throughout this Motion, the Debtors believe that the approval of a private sale of the Assets to the Purchaser pursuant to the terms of the Sale Agreement is appropriate.

22. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (2006). Although

01:14208558.1

10

section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan, courts in this Circuit and others, in applying this section, have required that the decision to sell assets outside the ordinary course of business be based upon the debtor's sound business judgment and a finding of "good faith." *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (requiring a finding of "good faith" to approve a sale under section 363(b)); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions."); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (examining the history of the standard required for a pre-confirmation sale of assets under section 363(b) and opining that the Third Circuit (i) has implicitly abandoned the "emergency" test under earlier precedent and (ii) has adopted the "sound business judgment" test as utilized by other courts).

23. The Debtors submit that more than ample business justification exists to sell the Assets to the Purchaser pursuant to the Sale Agreement. The Debtors believe that, because there is a limited market for the Assets, and time is of the essence with respect to the closing of the Sale, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit of stakeholders. Considering the circumstances, the Assets have been the subject of a reasonable marketing process, and the Debtors believe they have performed an exhaustive search for possible purchasers such that it is unlikely that any auction or further marketing of the Assets would result in a higher purchase price for the Assets. The Debtors negotiated with the Purchaser at arm's-length over the course of several days to

ensure that the Sale Agreement truly represents the best possible manner in which to monetize the Assets. Further marketing efforts would increase administrative costs and, possibly, result in the loss of the Purchaser's offer.

24. Accordingly, the Debtors submit that the Purchase Price is fair and reasonable, and that the Sale represents the sound exercise of the Debtors' sound business judgment.

**B.     An Auction of the Assets is Not Required.**

25. A debtor has broad discretion in determining the manner in which its assets are sold. *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("The manner of the sale is within the discretion of the Trustee. . . .").

26. Rule 6004 of the Bankruptcy Rules sets forth the procedural parameters for asset sales outside of the ordinary course of business and provides that such sales may be by either public or private sales. Fed. R. Bankr. P. 6004(f)(1). Accordingly, a debtor may sell assets of the estate outside of the ordinary course of business without conducting a public auction thereof, or, as the case may be, soliciting a bid higher or better than that contained in a privately negotiated purchase agreement. *See In re Woodscape Ltd. P'ship*, 134 B.R. 165, 174 (Bankr. D.Md. 1991) ("There is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

27. A debtor is obligated to maximize the return to its estate resulting from an asset sale, whether public or private. *See In re Bakalis*, 220 B.R. at 532 ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); *In re Nepsco, Inc.*, 36 B.R. 25, 26 (D. Me. 1983) ("Clearly, the thrust of the statutory scheme is to provide maximum flexibility to the trustee, subject to the oversight of those for

whose benefit he acts, i.e., the creditors of the estate."). Accordingly, if a debtor in possession concludes that a particular private purchase offer is the "most advantageous of the estate," a court should defer to the debtor in possession's business judgment. *Bakalis*, 220 B.R. at 532.

28. The Debtors submit that the proposed Sale is in the best interests of the Debtors' estates inasmuch as it will provide substantial value in exchange for assets that, under the circumstances, would otherwise be difficult to liquidate. In addition, as a practical matter, the Sale represents an efficient means for the disposition of the Assets. The Debtors believe that conducting an auction on notice during the pendency of these chapter 11 cases for this type of assets, particularly in light of their marketing efforts to date and cash constraints, would not only be futile, but would be costly and impractical. A public auction is unnecessary because the Purchaser's offer will add substantial value to the Debtors' estates, and the Debtors and their advisors have concluded, in their professional opinion after consideration of the offers already received and the market for the Assets, that there is a high degree of certainty that the proposed Sale to the Purchaser will provide the highest and best value for the Assets.

**C.     The Assets Should Be Sold Free and Clear of Liens, Claims and Encumbrances.**

29. In accordance with section 363(f) of the Bankruptcy Code, a debtor may sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

    (i)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

    (ii)    the lienholder or claimholder consents;

    (iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (iv)    such interest is in bona fide dispute; or

(v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30. Satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and clear of liens, claims and encumbrances. *See, e.g.*, *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear," provided that at least one of the subsections is met).

31. To the extent that any lien, claim or encumbrance exists, it would fall into at least one of the five categories enumerated in section 363(f). The Debtors submit that any such lien, claim or encumbrance will be protected adequately by attachment to the net proceeds of the Sale with the same force, effect and priority that such lien, claim or encumbrance has on the Assets. In addition, the Debtors believe that any entity with an interest in the Assets could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Accordingly, the Debtors respectfully submit that the sale of the Assets free and clear of liens, claims, and encumbrances satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code and should be approved.

**D.     The Sale of the Assets Is Proposed In "Good Faith" Under Section 363(m) of the Bankruptcy Code.**

32. The Debtors additionally request that this Court find that the Purchaser is entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

33. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an

> entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

34. Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *Abbotts Dairies*, 788 F.2d at 147. To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

35. The Debtors submit that the Sale Agreement has resulted from an arm's-length, actively negotiated transaction, in which the Purchaser was represented by counsel and at all times acted in good faith under the standards set forth in *Abbotts Dairies*. Accordingly, the Debtors request that this Court make a factual determination that the Purchaser will purchase the Assets under the Sale Agreement in "good faith," as defined in section 363(m) of the Bankruptcy Code and under Circuit precedent in *Abbotts Dairies*.

E.   **Waiver of Stay of Order**

36. Pursuant to Bankruptcy Rule 6004(g), an order authorizing the sale of property is stayed for fourteen days after the entry of the order unless the Court orders otherwise. The Debtors request that the Court order that such stay not apply with respect to the Sale. Relief from such a stay is an implicit provision of the Sale Agreement, and is necessary to prevent the

Debtors from being forced to expend additional estate funds that would otherwise be necessary to maintain the Assets.

## NOTICE

37. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Prepetition First Lien Agent; (iii) counsel to the Prepetition Second Lien Agent; (iv) counsel to the Prepetition Third Lien Agent; (v) counsel to Pride Mobility Products Corporation; (vi) counsel to the Committee; (vii) all parties that have previously expressed an interests in the bulk purchase of the Assets; (viii) all parties that may have a lien on the Assets; and (ix) all parties that have filed a notice of appearance in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, approving (a) the Sale Agreement; (b) the private sale of the Assets; and (c) and such other and further relief as it deems just and proper.

Dated: October 10, 2013  YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

*/s/ Kenneth J. Enos*
Robert S. Brady (2847)
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

MORGAN LEWIS & BOCKIUS LLP
Neil E. Herman
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to the Debtors and Debtors in Possession*